United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDWARD CONTRERAS,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE CO.; COMMISSIONER OF THE CALIFORNIA DEPARTMENT OF INSURANCE; and DOES 1-50, inclusive,

    Defendants.

No. C 07-02597 JSW

**ORDER GRANTING MOTION FOR REMAND**

Now before the Court is the Motion for Remand by Plaintiff Edward Contreras ("Contreras") and the Motion to Dismiss filed by Metropolitan Life Insurance Company ("MetLife"). Having carefully reviewed the parties' papers and considered the relevant legal authority, the Court hereby GRANTS Plaintiff's Motion for Remand. The Court therefore need not address Metlife's motion to dismiss.

**BACKGROUND**

Contreras, a former Chief of Police for the California Department of Developmental Services, filed this suit in the Superior Court of California on August 10, 2007. (Compl. ¶ 1.) The complaint names as defendants Metlife, fifty Doe defendants, and the Commissioner of the California Department of Insurance (the "Commissioner"). (*Id*.) The complaint states four causes of action against MetLife and Does 1-50, and two causes of action against the Commissioner. All of the claims are related to a long term disability insurance policy (the

"Policy") issued to Contreras by MetLife in or about 1995. (Compl. ¶¶ 5-77.)

Plaintiff's fifth and six causes of action allege that the Commissioner abused his discretion in approving the policy issued to Contreras by MetLife. Although the complaint does not state when the policy form was approved by the Commissioner, the policy at issue was purchased by Contreras in or around 1995. (*Id.* ¶ 6.) Thus, the latest date the Commissioner could have conceivably approved the policy form of Contreras' policy is also 1995.

At all times, Contreras was a resident of California and the Commissioner was an elected official charged with leading the Department of Insurance ("DOI"), a governmental agency unit of the State of California with offices in San Francisco. (Compl. ¶¶ 1, 3.) Thus, upon filing the complaint, diversity citizenship did not appear to exist. However, on May 16, 2007, MetLife timely removed the action on diversity grounds, contending that the Commissioner had been named in the complaint as a sham defendant in order to destroy diversity. (Notice of Removal, ¶ 5.) Contreras filed a Motion for Remand on June 18, 2007.

## ANALYSIS

### A.     Legal Standard Applicable to Motion for Remand.

In order to remove an action on the basis of diversity jurisdiction, the removing party must show that no defendant is a citizen of the same state as any plaintiff and that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1116 (9th Cir. 2004) (quoting 28 U.S.C. § 1332(a)). A party may challenge removal and the case remanded, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1441(c). However, the removing party always has the burden of establishing that removal is proper given the "strong presumption against removal jurisdiction." *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations omitted).

"[O]ne exception to the requirement of complete diversity [arises when a] non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir. 2001). In this circuit, a non-diverse defendant is deemed a sham and will not

2

1  defeat jurisdiction if, after all disputed questions of fact and all ambiguities in the controlling
2  state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the
3  party whose joinder is questioned. *Kruso v. International Telephone & Telegraph Corp.*, 872
4  F.2d 1416, 1426 (9th Cir. 1989). The failure to a state claim against the non-diverse defendant
5  must be "obvious according to the well-settled rules of the state." *United Computer Systems v.*
6  *AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002).

**B.     Metlife is Not a Citizen of California for Purposes of Diversity Jurisdiction.**

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy ... is between citizens of different States." 28 U.S.C. § 1332(a). Contreras argues that Metlife is not a diverse party because it failed to establish its citizenship as a foreign corporation with admissible evidence. (Motion for Remand at 14.) "[T]he party asserting diversity jurisdiction bears the burden of proof." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-58 (9th Cir. 2001). In determining the citizenship of a corporation, the Court looks at the "State by which it has been incorporated and the State where it has its principal place of business." *United Computer Systems,* 298 F.3d at 763. "The 'principal place of business' is determined by a two-part inquiry: (1) in what state does a 'substantial predominance' of corporate activity take place? or (2) if the corporation's activities are not predominant in a single state, then the principal place of business is where the majority of its executive and administrative functions are performed." *Id*.

Here, Metlife has submitted two pieces of evidence in support of its foreign citizenship: (1) Metlife requests that this Court take judicial notice of a copy of Metlife's profile in the 2006 AM Best's Insurance Report showing Metlife's principal place of business and its incorporated status in New York and (2) a declaration by Laura Sullivan, a manager with Metlife, attesting that the "majority of Metlife's executive and administrative functions are performed in New York, Metlife's executive offices are in New York, the New York regulators have monitored changes to products offered by Metlife, and the financial condition of Metlife is monitored by the New York Department of Insurance." (Opp. Br. at 19-20; *see also* Declaration of Bennet M. Cohen, Exh. B at 35; Declaration of Laura Sullivan ("Sullivan Decl."), ¶ 2.)

3

"Where the function of the court is to act as a factfinder or exercise its discretion, more leeway to take judicial notice is justified." *Korematsu v. United States*, 584 F. Supp. 1406, 1415 (N.D. Cal. 1984). In this circuit a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Ritter v. Hughes Aircraft Co*., 58 F.3d 454, 458 (9th Cir. 1995); *see also* Fed. R. Evid. 201(b). In *Ritter*, petitioner argued that the district court improperly took judicial notice of widespread layoffs based on a newspaper article that reported the layoffs. *Ritter*, 58 F.3d at 458. The Ninth Circuit, in affirming the district court's decision, found that the newspaper article was a fact that would be generally known and be capable of sufficiently accurate and ready determination. *Id.* Here, like the newspaper article in *Ritter*, AM Best's Insurance Report is an accepted and respected source, which is capable of accurate and ready determination. *Id*. Therefore, the Court takes judicial notice of AM Best's Insurance Report and further finds that Metlife is incorporated in New York. In addition, Ms. Sullivan, as a manager and authorized representative of Metlife, offered facts in her declaration based on her personal knowledge which demonstrate that the majority of Metlife's executive and administrative functions are performed in New York. (Sullivan Decl., ¶ 2.) Accordingly, the Court finds that Metlife has demonstrated that it is a foreign corporation for purposes of diversity jurisdiction.

**C.     At the Time of Removal, the Jurisdictional Amount was Met.**

Contreras also argues that the Court does not have jurisdiction over this matter because the alleged damages are not in excess of $75,000. The amount in controversy for diversity cases must exceed $75,000, and "[i]t must appear to a legal certainty that the claim is really for less than [$75,000] to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289 (1938); *see also* 28 U.S.C. § 1332(a). The jurisdictional minimum includes "claims for general and special damages (excluding costs and interests), attorneys fees if recoverable by statute or contract, and punitive damages if recoverable as a matter of law." *Conrad Associates v. Hartford Acc. & Indem. Co*., 994 F. Supp. 1196, 1198-99 (N.D. Cal. 1998). While an

4

estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys fees likely to be incurred cannot be estimated at the time of removal. *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n.4 (N.D. Cal. 2002). "If it is unclear what amount of damages the plaintiff has sought ... then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." *Gaus*, 980 F.2d at 566-67.

In this case, Contreras became permanently disabled on March 25, 2003 and his policy provided disability benefits in the amount of $1,054.90 per month until he reached the age of 65. (Compl. ¶¶ 7, 8.) On or about December 23, 2005, Metlife informed Contreras that he was not entitled to any further disability payments. (*Id.* ¶ 12.) Therefore, in the event the Court found Metlife liable and enforced the policy from December 2005 to year 2014 (the year when Contreras would reach age 65), Contreras would be awarded approximately $113,929.20. This amount clearly exceeds the jurisdictional requirement. In addition, Contreras seeks attorneys' fees, punitive damages, and special damages, all of which are included in the approximation of the amount in controversy. *See Conrad*, 994 F. Supp. at 1198-99. Accordingly, Metlife has met the burden of establishing that it is a legal certainty that Contreras' damages exceed $75,000. *See St. Paul,* 303 U.S. at 289.

**D.     There is No Unanimity Requirement When a Sham Defendant is Joined.**

Contreras contends that Metlife's Notice of Removal is procedurally defective because all defendants must join in a notice of removal. Here, the Commissioner failed to join in Metlife's notice of removal. Although, in most cases all defendants must unanimously join the removal petition, there is a judicially created exception for parties who are fraudulently joined. *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232 (9th Cir. 1986); *see also Emrich v. Touche Ross & Co*., 846 F.2d 1190, 1193 (9th Cir. 1988). Metlife has petitioned for removal on the basis that the Commissioner is fraudulently joined. Accordingly, if this Court finds that the Commissioner is a sham defendant, the Commissioner was not required to join in the notice of removal.

5

**E.     The Commissioner as a Named Defendant Precludes Diversity Jurisdiction.**

Next, Contreras argues that there is no diversity jurisdiction because his claims against the Commissioner in his official capacity are treated as claims against the state itself, which cannot be maintained in federal court on the basis of diversity jurisdiction. (Motion for Remand at 9.) In order for complete diversity to exist among the parties, "each Plaintiff must be a citizen of a different state from each Defendant." 28 U.S.C. § 1332(a)(1). "A claim alleged against a state officer acting in his official capacity is treated as a claim against the state itself." *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1382 (9th Cir. 1988). Because "[t]here is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction, a suit between a state and a citizen or a corporation of another state is not between citizens of different states." *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973); *Postal Telegraph Cable Co. v. State of Alabama*, 155 U.S. 482, 487 (1894); *see also California v. Steelcase Inc.*, 792 F. Supp. 84, 86 (C.D. Cal. 1992) ("[F]or diversity purposes, a state is not a citizen of itself.  Therefore, it cannot sue or be sued in a diversity action.")

Here, Metlife concedes that "[w]hen a state official is sued in his or her official capacity, the suit is considered against the state itself" for which there is no diversity jurisdiction. (Notice of Removal, ¶ 28 n.2; *citing Morongo*, 858 F.2d at 1382; *Moor*, 411 U.S. at 717.) However, while Metlife argues that the Commissioner "has no citizenship for jurisdictional purposes," it also argues that the same lack of citizenship "does not defeat diversity jurisdiction" when it sought to remove this case to federal court. (Notice of Removal, ¶ 28 n.2.) Metlife's distinction, although novel, "has no basis in the text of the removal statute" and has been rejected by other courts in this district. *Tomback v. UnumProvident Corp.*, 2005 WL 2596449 at *3 (N.D. Cal. 2005); *see also Fink v. Unumprovident Corp.*, 2005 WL 2375168 at *3 (N.D. Cal. 2005) (finding it is incorrect to assume that "the Commissioner, as a non-citizen, should be ignored for the purpose of analyzing diversity jurisdiction"). Similarly, courts in other districts have found that the presence of a non-citizen state precludes jurisdiction based on diversity. *See Batton v. Georgia Gulf*, 261 F. Supp. 2d 575, 583 (M.D. La. 2003) (finding that "[n]owhere is there any provision allowing diversity jurisdiction where a non-citizen state is a

6

party"); *see also Jakoubek v. Fortis Benefits Ins. Co.*, 301 F. Supp. 2d 1045, 1049 (D. Neb. 2003) (finding that "28 U.S.C. § 1332(a)(1) grants federal diversity jurisdiction only when plaintiffs and defendants are citizens of different states. Since the State defendants are not citizens, they and the plaintiff cannot be citizens of different states").

Accordingly, because Contreras has brought claims against the Commissioner, while the Commissioner was acting in his official capacity, Contreras' claims are construed as being brought against the State of California and there is therefore no diversity between the parties. *See Morongo*, 858 F.2d at 1382; *Moor*, 411 U.S. 717.

### F. Contreras's Claims are Not Barred by The Statute of Limitations Period.

Next, Metlife contends that the Commissioner is fraudulently joined because the statute of limitations period expired prior to the filing of the complaint. (Notice of Removal, ¶ 14.) "When fraudulent joinder is an issue the court must look to see if the Plaintiff has failed to state a cause of action against a resident Defendant." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "If the failure is obvious according to the settled rules of the state, the joinder of the resident Defendant is fraudulent." *Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1171 (N.D. Cal. 2003). "California ... takes the position that a Defendant may file a demurrer [if] the complaint does not state facts sufficient to constitute a cause of action." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998). However, a plaintiff "need only have one viable cause of action ... to defeat removal." *Brazina*, 271 F. Supp. 2d at 1171.

The California Insurance Code states that "any review by the courts shall be in accordance with the Code of Civil Procedure." Cal. Ins. Code § 10291.5(h). When an "action upon a liability [is] created by statute the statute of limitations shall be three years." Cal. Code Civ. Proc. § 338(a). Generally, the statute of limitations begins "upon the occurrence of the last element essential to the cause of action." *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 815 (2001). However, courts have overlooked this rule "where it would be manifestly unjust to deprive a Plaintiff of a cause of action before he is aware he has been injured." *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1150 (1991).

7

Metlife argues that statute of limitations period was triggered when Contreras purchased the policy in 1995, and expired three years later in 1998, nearly ten years before Contreras filed this lawsuit. (Notice of Removal, ¶ 14.) At least six judges in this district have addressed what triggers the statute of limitations when bringing a writ against the Commissioner under California Insurance Code § 10291.5(h), and only one has found that the statute of limitations began to run on the date the insured purchased the policy. *See Borsuk v. Mass. Mutual Life Ins. Co.*, 2003 U.S. Dist. LEXIS 25259 at *25 (N.D. Cal. 2003).[1] The majority of courts in this district have found that it is unreasonable to assume that a policyholder is aware he has been injured before the insurance provider denies benefits under the policy. *See Brazina*, 271 F. Supp. 2d at 1170-71 (where Plaintiff filed suit fourteen years after the issuance of the policy, the court found that it was not clear that "by the time the complaint in question was filed the statute of limitations had long since run, ... [and that] it seems likely that a California Court would interpret the language [in section 10291.5(h)] to allow this action to proceed"); *see also Tomback*, 2005 WL 2596449 at *8 (finding it "unreasonable to assume that policy holders would be 'put on notice' of the injury" caused by the Commissioner's failure to act to disapprove of the policy within thirty days); *Sullivan v. Unum Life Ins. Co. of America*, 2004 WL 828561 at *4 (N.D. Cal. 2004) (finding it "unfair to hold categorically that Plaintiff had notice of the way Defendants would administer the policy before [Defendant] denied him benefits"); *Glick v. UnumProvident Corp.*, No. C 03-4025 WHA at 3-4 (N.D. Cal. 2004) (finding it unfair to hold that "Plaintiff had notice of the way Defendants would administer the policy in years to come"); *Maiolino v. UnumProvident Corp.*, 2004 WL 941235 at *5 (N.D. Cal. 2004) (granting motion for remand given the absence of well-settled rules of State law on the statute of limitations issue).

---

[1] The *Borsuk* court found that the statute of limitations expired because Plaintiff was on notice, and the statute began to run either on the date Plaintiff agreed to the terms of the policy or on the date the Commissioner approved the policy. *Borsuk*, 2003 U.S. Dist. LEXIS 25259 at *25. However this Court respectfully finds the decision in *Borsuk* unpersuasive as the court in *Borsuk* did not provide the basis for its decision on that issue.

8

This Court agrees with the majority of courts in this district that it is unreasonable to assume that Contreras was put on notice when he agreed to the terms of the policy, but rather that Contreras was aware of his injury when Metlife denied Contreras benefits under his policy. Therefore, because Metlife denied Contreras the benefits under his policy on December 23, 2005, the statute of limitations for Contreras' claims against the Commissioner did not expire until December 23, 2008. *See* Cal. Code Civ. Proc. § 338(a). Accordingly, Contreras' claims against the Commissioner are not barred by the statute of limitations.

**G.     There are No Administrative Remedies for Contreras to Exhaust.**

Metlife also contends that Contreras claims against the Commissioner are barred because Contreras failed to exhaust his administrative remedies. (Notice of Removal, ¶ 16.) Like the statute of limitations defense, "exhaustion of administrative remedies is a prerequisite to California state court jurisdiction, which may be asserted by Defendants through a demurrer." *Brazina*, 271 F. Supp. 2d at 1171. Therefore, "this defense may be considered for purposes of fraudulent joinder." *Id.* However, the rule that "courts will not act until such administrative procedures are fully utilized and exhausted," does not apply "where an administrative remedy is unavailable or inadequate." *Leff v. City of Monterey Park*, 218 Cal. App. 3d 674, 680 (1990); *Tiernan v. Trustees of Cal. State University & Colleges*, 33 Cal. 3d 211, 217 (1982).

Metlife argues that Contreras failed to exhaust his remedies as provided under the Unfair Claims Settlement Practices Act ("UCPA") found in Insurance Code §§ 701, 704, 790.03(h), 790.04, 790.05, 790.06, and 728. (Notice of Removal, ¶ 18). However, Metlife has failed to provide any legal authority demonstrating that these sections of the Insurance Code provide an administrative process for an insured who contests the Commissioner's approval of a policy form. Therefore, the Court finds this argument unpersuasive.

Additionally, Metlife points to California Insurance Code §§ 12921.3, which provides that the Commissioner "shall receive complaints and inquiries, investigate complaints, prosecute insurers when appropriate and ... respond to complaints and inquiries by members of the public concerning the handling of insurance claims." Cal. Ins. Code § 12921.3. However, "this process is not a means of administrative appeal ... but [rather] a method for the public to

9

complain about the conduct of insurers." *Brazina*, 271 F. Supp. 2d at 1169. In fact, Metlife concedes that the Commissioner is not empowered under the Insurance Code to adjudicate claims. Notice of Removal, ¶ 19; *see also* Cal. Ins. Code § 12921.4(a) ("[t]his section shall not be construed to give the commissioner power to adjudicate claims").

Accordingly, the Court finds that it is possible for Contreras to show that "no other remedy is available to him other than asking the court to adjudicate his claim against [the Commissioner] directly." *See Brazina*, 271 F. Supp. 2d at 1169. In addition, because Contreras does not have an adequate means to attain relief he would also face suffering irreparable harm if he were prevented from seeking his claims in court. *See Omaha Indem. Co. v. Superior Court*, 209 Cal. App. 3d. 1266, 1273-74 (1989). Therefore, the Court does not find that Contreras' claims against the Commissioner should be disregarded for failure to exhaust administrative remedies.

### H.  This Court May Compel The Exercise of Discretion of the Commissioner.

Metlife contends that Contreras is not entitled to relief because he is improperly attempting to control the administrative discretion of the Commissioner. (Notice of Removal, ¶ 26.) Here, Contreras seeks an order from this Court mandating that the Commissioner exercise his discretion. (Compl. ¶ 70.) Under California law, "[a] writ of mandate may be issued by a court to any inferior tribunal ... to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust or station." Cal. Civ. Proc. § 1085(a). "While ordinarily, mandamus may not be available to compel the exercise by a court or officer of the discretion possessed by them in a particular manner, or to reach a particular result, it does lie to command the exercise of discretion - to compel some action upon the subject involved." *Ballard v. Anderson*, 4 Cal. 3d 873, 885 (1971).

The California Insurance Code provides that "[t]he commissioner shall not approve any disability policy for insurance or delivery in this state ... [i]f the commissioner finds that it contains any provision ... which is unintelligible, uncertain, ambiguous, or abstruse, or likely to mislead a person to whom the policy is offered, delivered or issued." Cal. Ins. Code § 10291.5(b)(1). In this circuit, "if an insured believes that the Commissioner has abused his

10

discretion by approving a policy in violation of [the California Insurance Code] or the Commissioner's own regulations implementing the Code, then he may petition for a writ of mandamus requiring the Commissioner to revoke his approval." *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 410-11 (9th Cir. 1995); *see also Van Ness v. Blue Cross of California*, 87 Cal. App. 4th 364, 371-72 (2001). Thus, "there is a general willingness to allow a writ when an insured wishes to challenge a Commissioner's approval of a policy under section 10291.5." *Brazina*, 271 F. Supp. 2d at 1167-68. Because Contreras has alleged that the Commissioner abused his discretion in violation of the Insurance Code, this Court may compel the Commissioner to revoke or rescind his approval of Contreras' policy.

### I. Contreras Did Not File His Claims in Bad Faith.

Metlife contends that Contreras has filed his claims in bad faith, by naming the Commissioner for the sole purpose of defeating diversity jurisdiction, while having no real intention to seek a joint judgment against the Commissioner. (Notice of Removal, ¶ 28). Where a "[p]laintiff has not, in fact, a cause of action against the resident Defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, the joinder can be said to be fraudulent, entitling the real Defendant to a removal." *Albi v. Street & Smith Pub.*, 140 F. 2d 310, 312 (9th Cir. 1944). However, "it is universally thought that [a plaintiff's] motive for joining such a Defendant is immaterial." *Id*. In *Wilson v. Republican Iron & Steel Company*, the Court noted that in order to prove that a defendant has been joined in bad faith, defendant must show that plaintiff joined the defendant "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith." *Wilson*, 257 U.S. 92, 98 (1921). Here, Contreras has set forth facts which tend to show that he has a reasonable basis in fact to prosecute the Commissioner in good faith under California Insurance Code § 10291.5. Metlife's only argument for a bad faith joinder is that Plaintiff's counsel has joined the Commissioner in similar cases, for the purpose of staying out of federal court. However, this argument is based purely on Contreras' motive for joining the Commissioner, and therefore fails. *See Albi,* 140 F.2d at 312 (holding that Plaintiff's "motive for joining a Defendant is immaterial.") Accordingly, the Court finds that Contreras claims

11

1 against the Commissioner were not brought in bad faith.

### J. Contreras Has Not Circumvented the Decision in *Moradi Shalal*.

Metlife contends that Contreras' claims against the Commissioner improperly attempt to circumvent the California Supreme Court's decision in *Moradi Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287 (1988), because the claims appear to address the Commissioner's lack of action based on his alleged failure to enforce the UCPA. (Notice of Removal, ¶ 27.) The Court in *Moradi Shalal* held that "[n]either section 790.03 nor section 790.09 was intended to create a private civil cause of action against an *insurer* that commits one of the various acts listed in section 790.03, subdivision (h)." *Moradi-Shalal,* 46 Cal. 3d at 304 (emphasis added). Contreras' claims under section 790.03, are not brought against the insurer Metlife but rather against the Commissioner. Because the Court's finding in *Moradi Shalal* did not specifically preclude an insured from bringing a claim under section 790.03 against the Commissioner, as opposed to the insurer, Contreras is not barred from bringing these claims.

### K. The Ninth Circuit has not Adopted the Misjoinder Rule Announced in *Tapscott*.

Finally, Metlife argues that the Commissioner is fraudulently joined because Contreras' claims against the Commissioner are unrelated to and distinct from the relief sought against Metlife. (Opp. Br. at 13, *citing* Fed. R. Civ. Pro. § 20(a) ("all persons may join in one action as Plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.")) Metlife alleges that the defendants are not jointly, severally, or alternatively liable to Contreras, that liability does not arise from the same transaction or occurrence, and there there is no common question of law or fact between the claims. (Opp. Br. at 15.)

Metlife relies on authority in the Eleventh Circuit, which holds that claims can be considered fraudulently joined when they are misjoined. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996). In *Tapscott*, two groups of plaintiffs sued separate groups of defendants on almost entirely separate legal grounds and attempted to join the defendants

12

pursuant to Federal Rule of Civil Procedure 20. *Id.* The court in *Tapscott* found that joinder of the defendants was "so egregious as to constitute fraudulent joinder." *Id.* at 1359. This Court has been unable to find any authority in the Ninth Circuit that adopts the application of the *Tapscott* rule. Further, in this case, Contreras brought different causes of action against separate defendants without resort to Rule 20. However, even if the Court were to apply the *Tapscott* rule, "there is enough of a connection to militate against application of *Tapscott* here, because 'the outcome of the insurance contract dispute between [the insurer] and [the insured] may very well depend on whether the Commissioner will withdraw approval of the policy in question.'" *See Sullivan*, 2004 WL 828561 at *4 (citing *Brazina*, 271 F. Supp. 2d at 1172). Therefore, the Court finds that the Commissioner was not fraudulently joined in this suit.

### L. Attorneys' Costs and Fees

Pursuant to 28 U.S.C. § 1447(c), Contreras requests an award of attorneys' fees and costs incurred as a result of Metlife's allegedly improper removal. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). To determine whether to award costs and fees under Section 1447(c), this Court has a "great deal of discretion." *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (9th Cir. 1993). Although it was not ultimately persuaded by Metlife's arguments, the Court does not find that Metlife's removal was frivolous or motivated by bad faith. The Court therefore declines to exercise its discretion to award Contreras' fees and costs under Section 1447(c).

### CONCLUSION

For the foregoing reasons, the Court GRANTS Contreras' Motion for Remand and DENIES Contreras' request for costs and fees. The case is remanded to the Superior Court for the City and County of San Francisco. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 29, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE